# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA MEDINA COLADO,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>K. ALLISON, Warden<br><br>　　　　　　Respondent. | CASE NO. 11-CV-2751-H (WVG)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

On November 23, 2011, Cecilia Medina Colado ("Petitioner"), a California state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his conviction. (Doc. No. 1.) On April 25, 2012, Petitioner filed an amended habeas petition. (Doc. No. 23.) On August 15, 2012, K. Allison ("Respondent") filed an answer to Petitioner's amended petition. (Doc. No. 27.) On October 15, 2012, Petitioner filed a traverse. (Doc. No. 31.) On October 26, 2012, the magistrate judge issued a report and recommendation to deny the petition.[1] (Doc. No. 32.) Petitioner filed objections to the report and recommendation

---

[1] In his petition, Petitioner consented to magistrate judge jurisdiction. (Doc. No. 1 at 11; Doc. No. 23 at 11.) However, Respondent never consented to magistrate judge jurisdiction. See 28 U.S.C. § 636(c). Therefore, the Court decides dispositive matters in this case. Id.

on February 27, 2013. For the following reasons, the Court denies the petition for writ of habeas corpus.

## BACKGROUND

Petitioner seeks relief from his October 2009 California state court conviction for committing lewd acts upon a child. (Doc. No. 23.) The following facts are taken from the California Court of Appeal's February 5, 2009, decision affirming Petitioner's conviction and sentence. (Lodgment No. 6.) The facts are presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1).

> Lesly S. was 11 years old and in the sixth grade at the time of trial. Lesly's parents were divorced and she split her time living with each of them. Lesly's grandmother, Ofelia, lived in her mother's house. Ofelia's room was a converted garage that had its own bathroom. When Lesly was in the second grade, Colado, Ofelia's boyfriend, moved into the converted garage to live with Ofelia. Colado did things to Lesly in Ofelia's room that made her uncomfortable, such as kissing her mouth, trying to put his tongue into her mouth, putting his penis in her butt, and putting his finger up her front private parts. Lesly did not tell anyone what was happening.
>
> When Lesly was in the third grade she told her school friends, Geovanna and Rosetta, that she had a "secret" and made them promise not to tell anyone. Lesly said that her grandmother's boyfriend was "raping [her] or something like that." Lesly also shared the secret with her cousin and close friend, Alison, who was two years older than her. Although Alison wanted Lesly to tell Lesly's mother the secret, Lesly did not because she was too scared. Ultimately, Lesly's mother learned about the allegations.
>
> About 20 days after the last touching incident, Dr. Joyce Adams conducted a physical examination of Lesly, but found no evidence of sexual abuse. In April 2008, Laurie Fortin, a forensic interviewer with a child advocacy center, interviewed Lesly.
>
> An information charged Colado with six counts of committing a lewd act with a child between the dates of December 1, 2005, and April 11, 2008, namely: touching Lesly's buttocks with his penis (counts 1 & 2); touching Lesly's vagina with his hand (counts 3 & 4); and kissing Lesly (counts 5 & 6). As to counts 1 through 4, Colado was alleged to have had substantial sexual conduct with his victim, who was a child under 14 years of age.
>
> At trial, the jury heard testimony from Lesly, and from Geovanna, Rosetta and Alison regarding Lesly's out-of-court statements. The People played a DVD of Fortin's interview with Lesly for the jury, and each juror received a transcript of the interview. During the interview, Lesly told Fortin that Colado "abused" her by putting his penis in her butt, putting his finger inside her, and kissing her on the mouth. At trial, Fortin testified that although she had interviewed Lesly, it was not her job to determine

> whether a child was telling the truth or whether a suspect should be charged with a crime. She generally explained that not all abused children appear traumatized, and that children often delay or fail to disclose abuse.
>
> Colado testified in his own defense. He claimed that Ofelia never left him alone in the room with Lesly, and denied touching Lesly with his penis or kissing her on the mouth. Ofelia also claimed that she never left Lesly alone with Colado. She stated that Lesly displayed some jealousy toward Colado, such as stating "no, no, she is my grandmother" when Colado wanted to hold Ofelia. Colado's ex-wife and adult daughter testified that Colado never behaved inappropriately toward children.
>
> The jury found Colado guilty as charged on all counts, and found he had substantial sexual conduct with Lesly as alleged in counts 1 through 4. The trial court sentenced him to eight years in prison on count 1. He received five consecutive two-year terms on counts 2 through 6, for a total prison term of 18 years.

(Lodgment No. 3 at 2-4.)

The California Court of Appeal affirmed Petitioner's conviction on July 1, 2011. (Id. at 1.) Petitioner directly appealed his conviction to the California Supreme Court. (Lodgment No. 2.) The Supreme Court denied his petition for review on September 14, 2011. (Lodgment No. 1 at 6.)

Petitioner then unsuccessfully pursued collateral relief in the California Supreme Court. (Lodgment No. 1.) On November 23, 2011, Petitioner filed his federal petition for writ of habeas corpus. (Doc. No. 1.) Petitioner also concurrently filed a second habeas petition with the California Supreme Court in order to exhaust a third claim, which he had mistakenly raised on state law grounds. The California Supreme Court denied Petitioner's second habeas petition. (Doc. No. 22 at 4.)

In his federal petition, Petitioner alleges three claims for relief. (Doc. No. 23 at 6-8.) Petitioner alleges claims for a violation of his confrontation rights based on the admission of Lesly's out-of-court statements; a violation of his due process rights based on insufficient evidence to support his conviction; and a violation of his due process rights based on improper expert testimony and the court's failure to give a limiting instruction. (Id.)

///

///

# DISCUSSION

## I. Standard of Review

A petitioner in state custody pursuant to the judgment of a state court may challenge his detention only on the grounds that his custody is in violation of the United States Constitution or the laws of the United States. 28 U.S.C. § 2254(a). The Court may only grant a habeas petition when the underlying state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

To determine what constitutes "clearly established federal law" under 28 U.S.C. § 2254(d)(1), courts look to Supreme Court holdings existing at the time of the state court decision. See Lockyear v. Andrade, 538 U.S. 63, 71-72 (2003). A state court's decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) if the state court confronts a set of facts "materially indistinguishable" from a decision of the Court, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyear, 538 U.S. at 72-75. A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases, but unreasonably applies it to the facts of a particular state prisoner's case," or if a state court incorrectly extends the established rule to a new context, or refuses to extend it to a new context where it should apply. Williams, 529 U.S. at 407; Lockyear, 538 U.S. at 76. To be an unreasonable application of federal law, the state court decision must be more than incorrect or erroneous; it must be objectively unreasonable. Id. at 75.

Federal courts apply 28 U.S.C. § 2254 to "the last reasoned decision" by a state court addressing the merits of the claim. Ylst v. Nunnemaker, 501 U.S. 797, 803

(1991). The last reasoned decision by the state court addressing Petitioner's claims is the California Court of Appeal's July 1, 2011, unpublished opinion in People v. Colado, D056758. (Lodgment No. 3.)

**II.   Analysis**

   **A.   Confrontation Clause Claims**

Petitioner alleges that the admission of parts of Lesly's testimony violated his Confrontation Clause rights because her statements lacked sufficient indicia of reliability. (Doc. No. 23 at 1.) Specifically, he challenges Lesly's testimony regarding her prior statements to her friends Geovanna and Rosetta and to her cousin Alison under Idaho v. Wright, 497 U.S. 805 (1990). (Id.)

As a preliminary matter, Idaho v. Wright is inapplicable because Lesly was not an unavailable witness. See Crawford v. Washington, 541 U.S. 36, 59 n. 9 (2004). The Confrontation Clause bars admission of testimonial out-of-court statements made by an unavailable witness, unless the defendant had a prior opportunity to cross-examine the witness. Crawford, 541 U.S. 36, 68 (2004). "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n. 9; see also California v. Green, 399 U.S. 149, 162, 90 (1970); cf. Idaho, 497 U.S. at 814-16 (child victim's hearsay statements not admissible because the child did not testify at trial subject to cross-examination, and her statements did not bear adequate indicia of reliability.)

Further, Petitioner's rights under the Confrontation Clause were not violated because Lesly's comments to her friends were non-testimonial statements. The Confrontation Clause only prohibits the admission of certain hearsay statements that are testimonial in nature. See Davis v. Washington, 547 U.S. 813, 821, 825 (2006) (Confrontation Clause requirements of unavailability and prior right to cross-examine dispensable when statements are clearly non-testimonial); see also Giles v. California, 554 U.S. 353, 376 (2008). Testimonial statements are those "statements that were made

under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52. In contrast, statements to police officers made under circumstances that objectively indicate an ongoing emergency, or not made for the "primary purpose of . . . establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution" are non-testimonial. Davis, 547 U.S. at 822.

Here, there is no evidence that Lesly's statements were testimonial, see Crawford, 541 U.S. at 61. Lesly did not make the at-issue statements to law enforcement personnel, nor is there any evidence that Lesly's comments to her young friends and cousin prior to Petitioner's prosecution were for the purpose of setting in motion Petitioner's prosecution. See Crawford, 541 U.S. at 52. Rather, the evidence shows that Lesly wanted her friends and cousin to keep her statements a secret. (See Lodgment No. 7, RT vol. 1 at 140-45.) In addition, the Court of Appeals found that Lesly was competent to testify at trial. See Kentucky v. Stincer, 482 U.S. 730, 745-46 (1987). Lesly recalled and narrated most of the facts and told the court that the number one rule of the court was to "tell the truth." Accordingly, Petitioner has failed to show how the admission of Lesly's statements violated any well-established Supreme Court law.

**B.  Sufficiency of the Evidence**

Petitioner's second claim alleges insufficient evidence to support his conviction. (Doc. No. 23 at 7.) Specifically, he argues that the victim's testimony was not credible, and that there was no physical or DNA evidence that the abuse occurred. (Id.)

A constitutional due process challenge to the sufficiency of the evidence to support a conviction is evaluated under Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). A habeas petitioner challenging a state criminal conviction based upon sufficiency of the evidence is only entitled to relief "if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. Whether any rational trier of fact could have found the

essential elements of the crime charged beyond a reasonable doubt is viewed in the light most favorable to the prosecution. Id. at 318-19. Even if the record contains facts that support conflicting inferences, a reviewing court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and defer to that determination. Id. at 326.

In determining that sufficient evidence supported Petitioner's conviction, the California Court of Appeal used a state law standard identical to the Jackson standard. (Lodgment No. 3 at 12-13.) The state court's decision was not an unreasonable application of the federal standard to the facts of this case. The prosecution presented sufficient evidence from which a rational trier of fact could conclude that Petitioner was guilty of committing a lewd act upon a child under Cal. Penal Code § 288(a).

Under California law, it is a felony to "commit[] any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Cal. Penal Code § 288(a). Petitioner does not contest that Lesly was under the age of fourteen at the time of the alleged acts. (See Lodgment No. 3 at 2.)

In counts 1 and 2, the jury convicted Petitioner of touching Lesly's buttocks with his penis. (Id. at 13.) Petitioner was not convicted of sodomizing Lesly. (Id. at 14.) Lesly testified that Petitioner would put his penis "in her butt," but that he did not go deep and it did not hurt. (Lodgment No. 7, RT vol. 1 at 132, 150-51.) Alison testified that Lesly told her that Petitioner "put his penis on her butt." (Lodgment No. 7, RT vol. 2 at 215.) Lesly also testified that she knew it was Petitioner's penis that was touching her butt because she glimpsed back and saw it. (Lodgment No. 7, RT vol. 1 at 151.)

In counts 3 and 4, Petitioner was convicted of touching Lesly's vagina with his hand. (Lodgment No. 3 at 14.) Lesly testified at trial that Petitioner put his finger up her front private parts on the inside, and that it really hurt. (Lodgment No. 7, RT vol. 1 at 149-50.)

In counts 5 and 6, Petitioner was convicted of kissing Lesly. (Lodgment No. 3 at 15.) Lesly testified that Petitioner would kiss her on her mouth and would try to put his tongue in her mouth. (Lodgment No. 7, RT vol. 1 at 131-32.) Alison also testified that Lesly told her that Petitioner would kiss her on the mouth when her Grandmother, Ofelia, was not in the room. (Lodgment No. 7, RT vol. 2 at 218-19.)

In addition, the prosecution presented corroborating testimony. (Lodgment No. 7, RT vol. 2 at 192-211, 218-19.) The jury saw a tape recorded interview between Lesly and Dr. Fortin in which Lesly described the above incidents. (Lodgment No. 7, RT vol. 1 at 186-88.) Petitioner testified in his own defense and denied that he ever touched Lesly inappropriately. (Lodgment No. 7, RT vol. 2 at 322-341.) Ofelia, Lesly's grandmother, testified that she "never" left Lesly alone with Petitioner and that if she had to do the laundry, she would prepare "ahead of time in the bedroom" so that she only had to leave the bedroom for less than five minutes. (Id. at 308.)

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find Petitioner guilty of all six counts of committing a lewd act upon a child. See Jackson, 443 U.S. at 318-19. Thus, Petitioner's claim fails.

**C.     Improper Expert Testimony**

     **i.     Child Sexual Abuse Accommodation Syndrome ("CSAAS") Testimony**

Petitioner's final claim alleges a due process violation based on the state court's improper admission of expert testimony, or in the alternative, failure to give a limiting instruction. (Doc. No. 23 at 8.) The admission of evidence at trial is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). The admission of expert testimony to help prove the probative question of whether prior injuries were the result of child abuse does not violate constitutional due process. See Estelle v. McGuire, 502 U.S. 62, 68-69 (1991); Moses v. Payne, 555 F.3d 742, 761 (9th

Cir. 2008) (noting that there is no Supreme Court precedent precluding the admission of expert witness testimony). Accordingly, Petitioner has failed to demonstrate how Dr. Fortin's testimony violated clearly established Supreme Court law. Therefore, Petitioner's claim fails.

### ii. Limiting Instruction

Petitioner alleges that even if the trial court properly admitted Dr. Fortin's testimony, the trial court's failure to give a limiting instruction violated his due process right to a fair trial. (Doc. No. 23. at 8.) Specifically, he contends that the jury should have been instructed that CSAAS testimony is not evidence that the defendant committed any of the charged crimes, and that the evidence should be considered only in deciding whether the victim's conduct was in conformity with someone who has been molested. (Id.) Petitioner cites Tumey v. Ohio, 273 U.S. 510 (1927), and Estelle v. McGuire, 502 U.S. 62 (1991), in support of his claim.[2] (Doc. No. 23 at 8.)

Failure to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). The instructional error must so infect the trial as to render it fundamentally unfair. Estelle, 502 U.S. at 72 (reiterating that habeas courts may not review a state court's jury instructions except for due process violations that make a trial unfair). The omission of an instruction is less likely to be prejudicial than an erroneous instruction. Henderson v. Kibbe, 431 U.S. 145, 153-55 (1977) (holding that a trial court's failure to instruct the jury on an element of the crime did not rise to the level of a due process violation because the jury was put on notice, both by the court's reading of the criminal statute and the parties' arguments, that causation needed to be proved). Even when a state court erroneously fails to instruct the jury, a habeas petitioner must prove that

---

[2] Tumey is not controlling authority on the issue Petitioner raises regarding a limiting jury instruction. Tumey involved a defendant's successful due process challenge based on his right to have an impartial judge hear his case. Tumey, 273 U.S. at 535.

1  "there was 'a reasonable likelihood' that the jury applied the instruction in a way that
2  relieved the State of its burden of proving every element of the crime beyond a
3  reasonable doubt." See Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (citing
4  Estelle, 502 U.S. at 72).

5  The California Court of Appeal found that Dr. Fortin's testimony was neutral,
6  was couched in general terms, and that it was "unlikely that the jury interpreted Fortin's
7  brief testimony regarding Lesly's demeanor as testimonial to Lesly's credibility."
8  (Lodgment No. 3 at 11.)  The court noted that the trial court instructed the jurors to
9  "make their own judgments about the validity of the expert's opinions." (Id.)  Lastly,
10 the court concluded that "the facts of this case do not support the contention that, but
11 for the court's erroneous omission of the jury instruction, [Petitioner] would have
12 obtained a better result." (Id. at 12.)

13 The Court agrees.  Petitioner fails to show how the state court's failure to read
14 a limiting instruction rendered his trial fundamentally unfair.  Viewing the evidence in
15 the light most favorable to the prosecution, the jury did not convict Petitioner solely on
16 the basis of Dr. Fortin's testimony in a way that relieved the prosecution of its burden.
17 See Waddington, 555 U.S. at 190-91.  Lesly personally testified that Petitioner
18 committed the acts that he was later convicted of.  (Lodgment No. 7, RT. vol. 1 at 123-
19 74.)  Her testimony was corroborated by three witnesses: Geovanna, Rosetta, and
20 Alison. (Lodgment No. 7, RT vol. 2 at 192-211, 218-19. ) Dr. Fortin's testimony was
21 objective, general, and in conformity with expert testimony requirements relating to
22 CSAAS. See Brodit, 350 F.3d at 991.  The Court told the jury that it was free to make
23 its own judgments regarding the expert opinion.  Accordingly, the Court concludes that
24 the failure of the trial court to read a limiting instruction did not so infect "the trial
25 process to the point that the resulting conviction violate[d] due process." Estelle, 502
26 U.S. at 72 (citation omitted). Thus, Petitioner's claim fails.
27 ///
28 ///

**D.     Denial of Certificate of Appealability**

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability from the district court judge or a circuit judge. 28 U.S.C. § 2253(c)(1)(A). A court may issue a certificate of appealability only if the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In the present case, the Court concludes that petitioner has not made such a showing and therefore the Court denies Petitioner a certificate of appealability.

## CONCLUSION

Petitioner has not established that the state court's determination "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. § 2254(d). Accordingly, the Court denies the petition for habeas corpus. In addition, the Court denies Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

DATED: May 8, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT